*Let this be filed*
*ESH*
*8/20/07*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Madison Collins Jr. | ) |
| 7157 Marbury Ct. | ) |
| District Heights, MD 20747 | ) |
| 301-516-7756 | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 07-0497-(ESH) |
|  | ) |
| Metropolitan Washington Council of Governments | ) |
| Marie Ricasa | ) |
| 777 North Capitol St., NE, 3rd Floor | ) |
| Washington, DC 20007 | ) |

## Amended Complaint and Objection To Defendant Answer

Plaintiff, Madison Collins, Jr., pro se, hereby files this Amended Complaint and Objection to Defendants' Answer, and represents as follows:

1.      Plaintiff Madison Collins Jr., was subject to the wrongful conduct alleged in this

Amended Complaint and serves as the Objection to Defendants Answer for case Number: 1:07-

cv-497 which is inclusive with the Original Complaint filed February 16th, 2007,

(Exhibit A.). The Amended Complaint is also in accordance with the EEOC Complaint filed in

June 2006 giving the Plaintiff the Right to Sue. (Exhibit B.) The Plaintiff affirms that for the

period of August, 2005- January 2006, the Plaintiff Madison Collins Jr., was exposed to

calculated Racial and Sexual Harassment, Racial and Sexual Discrimination, Retaliation and

Stereotyping against Plaintiff Madison Collins Jr., by the Council of Governments (COG) Human

Resources Director, Imelda Roberts and Human Resources Manager, Janet Ernst, both Asian

females, Supervisor, Nancy Rea, White female, and COG employee Marie Ricasa, Asian female,

all Defendants' and herein, named as Defendants' representing COG. The Plaintiff's Amended

**RECEIVED**

AUG 1 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Complaint inclusive with (Exhibit <u>A.</u>), will serve as the Plaintiffs Objection to Defendants Answer. The Plaintiff herby affirms the Defendants' Answer **DOES NOT** affirmatively defend (Exhibit <u>A.</u>) and Amended Complaint in reference to case number: 1:07-cv-497-ESH. The Plaintiff contends his rights were violated under TITLE VII of the Civil Rights Act of 1964, (TITLE VII). The Plaintiff affirmatively asserts that he is entitled to Damages and Prayer for Relief under that statute so forth named.

2.      I Madison Collins, Jr., Plaintiff, submit truthfully, the account of the Direct Racial and Sexual Discrimination against Plaintiff by the Defendants' named, who are all inclusive and named in (Exhibit <u>A.</u>), the charge of Racial and Sexual Harassment, Racial and Sexual Discrimination, Retaliation and Stereotyping against Plaintiff Madison Collins Jr., by the named Defendants' strictly based on his Race (Black) and Sex (Male) and **IS** entitled Damages and Prayer for Relief under TITLE VII of the Civil Rights Act of 1964, (TITLE VII).

3.      Plaintiff contends that he was continuously, vigorously Harassed and Discriminated against for nearly a 10 month period August 2005 through June 2006 by the Defendants' and maliciously Assaulted by Ms. Ricasa, January 23, 2006, at COG with a large heavy door in their Board Room resulting in serious physical injury and continued emotional distress. The Harassment and Assault by Ms. Ricasa was accounted in (Exhibit <u>A.</u>), and supported by physical evidence. The Plaintiff's claim is for Prayer For Relief and Damages which is entitled to Plaintiff under TITLE VII of the Civil Rights Act of 1964, (TITLE VII), because of the actions by the Defendants'

4.      Plaintiff realleges affirmatively that the Defendants' Answer failed to substantiate the Defendants' claim that their actions did not violate his Civil Rights under TITLE VII of the Civil Rights Act of 1964, (TITLE VII). Plaintiff affirms ample evidence will be made available to the Court by witness testimony, direct accounts of the incidences charged, and through letters and email communications that from which a jury could conclude that for nearly a 10 month period,

2

roughly August, 2005 through June 2006, Plaintiff Marie Ricasa calculatedly and systematically

harassed, slandered, character assassinated and Assaulted the Plaintiff with a large heavy door on

January 23, 2006, at COG in their Board Room.

5.       Plaintiff additionally affirms that the named Defendants' for COG violated Plaintiff's

Civil Rights by ignoring Ms. Ricasa's bizarre harassing behavior, scoffed at Plaintiff's continuous

pleas for help and protection by making Sexist and Racist statements directly to Plaintiff,

punished Plaintiff by taking work away or making Plaintiff responsible for additional manual

work outside of the normal realm of Plaintiff's responsibilities, all for reporting Ms. Ricasa's

Harassment and asking for protection and help. The Defendants' then Retaliated against Plaintiff

by Micromanaging the Plaintiff when he reported the Assault to COG Executive Director, David

Robinson. The Plaintiff was Wrongfully Forced to Resign (Exhibit D & E.) and ultimately fired

by Defendant. The Plaintiff also asserts that the Discrimination, Harassment, Micromanagement

and Stereotyping **DONE** towards Plaintiff by the Defendants' was based strictly on Plaintiff's

Race and Sex and the Defendants', all inclusive, **DOES** Amended Complaint and (Exhibit A.),

inclusive, directly to Plaintiff which is a direct violation of the Plaintiff's rights under TITLE VII

of the Civil Rights Act of 1964, (TITLE VII). It was COGs responsibility by law to provide a

workplace safe and free from Harassment, Discrimination and Retaliation based on Race and or

Sex, and not to engage in those activities on COG premises.

6.       Plaintiff contends firmly that Plaintiff's Race (Black) and Sex (Male) were the

determining factors in the Defendants' attitude and actions towards Plaintiff. He asserts that the

Defendants' would have handled Ms. Ricasa's transgressions more judiciously had the Plaintiff

not been Black and Male.

## FACTS ALL COMMON TO CAUSES OF ACTIONS

7.        Plaintiff Madison Collins Jr. was subject to Harassment by Marie Ricasa from August

2005, until he was Assaulted by Ms. Ricasa in January 23, 2006, which is all detailed in (Exhibit

A.). After Ms. Ricasa Harassed the Plaintiff for months, she left for approximately one month

during November and December 2005, to vacation to her native home in the Philippines as she

did every year. Plaintiff notes that he had no problems with any other COG staff member or

client during the nearly two month span Ms. Ricasa was away and that just prior to Ms. Ricasa's

return to work the Plaintiff was praised by his Supervisors for the good work he had been doing

and for the way he had handled the Harassment by Ms. Ricasa.

8.        The day the Plaintiff returned to work after the Assault Wednesday, January 26, 2006, the

Defendants' Human Resources (HR), Director Imelda Roberts, and HR Manager Janet Ernst,

both Asian females, Nancy Rea, White female, all questioned the Plaintiff in a prejudicial manner

about Defendant Marie Ricasa's Assault on the Plaintiff in COGs Board Room Lounge on

January 23, 2006. The Plaintiff describes the Defendants' demeanor as negatively suggestive and

stereotypical towards the Plaintiff and charges the Defendants' "out right scoffed" at the

Plaintiff's report of the Assault incident even though the Plaintiff reported the Assault seconds

after the incident occurred and had systematically reported the previous Harassment by Ms.

Ricasa for months prior to the incident. The Plaintiff's hand was cut, bleeding and swelling and

shown directly to the Defendant's directly after the incident. The Plaintiffs also contends that

COG employee Owasis Rafique was in the Board Room at the time of the incident and is a

reluctant witness to the incident. Mr. Rafique told the Plaintiff directly he did not want to get

involved. (Note the Defendant had friendly relationship with Mr. Rafique and was taking Mr.

Rafique to the Board Room for a free lunch on the day and time the Assault occurred). The

Plaintiff asserts that even with all the observance and documentation of Ms. Ricasa's Harassment

towards Mr. Collins and overlying factors about Ms. Ricasa's attitude and actions towards the

4

Plaintiff, the named Defendants' all made Stereotypical and Discriminatory statements defending

Ms. Ricasa at the instant. The Plaintiff states he felt "ganged up on" by the Defendants' when he

reported the Assault and tried to discuss the incident with the Defendants'.

9.      The Plaintiff called Defendant Nancy Rea the Monday morning after the Assault to tell

her he was waiting on a call from his physician, Dr. Bruno, and would not be able report to work.

Ms. Rea responded "Why didn't you go to the Hospital Friday. "You left work early to go to the

hospital". (The Plaintiff left work that day at 4:30 he normally leaves at 5:00) She said, "I'll need

a doctor's excuse from you". The Plaintiff explained to Ms. Rea that he needed to go home first

to get his insurance card after he called Dr. Bruno from COG the day of the Assault. The

Plaintiff states he got the answering service and left a message. The Plaintiff explained to Ms.

Rea that he then called his health insurance company and followed the treatment suggestions of

the advice nurse. Dr. Bruno's office called back that Monday afternoon and informed the

Plaintiff he could not see him for two weeks and instructed the Plaintiff to go to the emergency

room to get treated. The Plaintiff went straight to the emergency room at Georgetown University

Hospital and received treatment. The Plaintiff returned to work two days later on Wednesday and

reported to supervisor, Nancy Rea. Ms. Rea did not ask Plaintiff how he was feeling instead

questioned the Plaintiff about his actions over the weekend asking the Plaintiff very aggressively,

"Why did you wait to go to the doctor Monday morning". Ms. Rea knew the Plaintiff was a

single father with 2 children. She further questioned Plaintiff "Did you see your kids over the

weekend? Don't you have about a 2 year old daughter? Did you pick her up at all? Gesturing,

"Did you hold her up in the air and toss her around", at that moment Ms. Rea demanded a

doctors' excuse from the Plaintiff in order for him to use sick his leave for the days he was off.

The Plaintiff submitted an excuse from the hospital to Ms. Rea (Exhibit F.). At that point the

Defendant began taking notes whenever she interacted with the Plaintiff. The following day

when the Plaintiff reported to Ms. Rea, she asked the Plaintiff "Do you have to wear the brace?

Ms. Rea requested Plaintiff "Remove his brace if he was going to work, because of the attention

it brought". The brace was put on by an emergency room nurse at Georgetown University

Hospital.

10.     After meeting with Ms. Rea, the Plaintiff reported to Imelda Roberts, COG Human

Resources Director, told Plaintiff "She would start a formal investigation about the incident and

get back to him once she had a chance to talk with everyone". During this meeting in Ms.

Robert's office, Ms. Robert's stated to Plaintiff that, "The situation would have to be handled

differently, now that Dave is involved" Ms. Roberts sternly told the Plaintiff, "You should not

have emailed Dave" and "not send any emails referring to this incident, write it on paper and

submit it". The Plaintiff reported the Assault incident to Mr. Dave Roberts Executive Director of

COG because of the ill-response towards Ms. Ricasa's Harassment towards the Plaintiff by the

Defendants for the months leading up to the Assault. The Plaintiff told Ms. Roberts about Ms.

Rea's attitude and statements to him and his intent to report the Assault to police and authorities.

Ms. Roberts told the Plaintiff she could not make any suggestions to him at that time, but said

that "it might not be in his best interest to report the incident to the police or contact EEOC until

after the investigation". The Plaintiff was asked to take any information and hospital records

about the incident to Janet Ernst, who would file Workman's Compensation paper work on the

Plaintiff's behalf. The Plaintiff walked next door to Ms. Ernst's office and gave her the

paperwork directly. (Note: Later emails from Ms. Ernst and Mr. Smith about the incident that

Plaintiff did not submit the Workman's Compensation paperwork to Ms. Ernst in a timely fashion

and the tone in the emails). During that meeting in Ms. Ernst's office, Ms. Ernst stated to the

Plaintiff that she "Did not believe little Marie could do that to a big guy like you", "Giggling with

a smirk on her face said, "Come on, what is Marie, 5-2 120 pounds". Plaintiff believes Ms. Ernst

statements to him suggested Ms. Ernst did not believe Plaintiff account of the incident, even

before she heard from Ms. Ricasa. (Note: Ms. Ernst was not copied on the email reporting the

Assault because it was common knowledge amongst COG staff Ms. Ernst shared employee's

personal confidential discussions with the receptionist and others at COG. This claim can be

corroborated through testimony of COG staff).

11.    The weeks following the incident, the Plaintiff contends that he was exposed to a very

hostile work environment and continuously made to feel like he was in jeopardy causing him

continued emotional distress. Although the Plaintiff only discussed the incident with the

appropriate COG staff as he was instructed to by the Defendants and not to send any email

communications about this incident, the incident was common knowledge to most COG

Administration and staff. This further substantiates the Plaintiffs claim that Personal and

Confidential employee information was shared with inappropriate staff by COG Human

Resources, specifically Janet Ernst.

12.    The only official response the Plaintiff received from any of the Defendants' directly

responsible for handling this incident was a non-dated unsigned, hard copy memo, with errors

from Mr. Smith (Exhibit G.). The memo from Mr. Smith stated that there was no way to

substantiate the Plaintiff's claim of Assault and Injury and was completely biased in nature. As

pointed out, the Assault took place in COGs Board Room Lounge, where Mr. Smith and Ms. Rea

were attending a meeting and the Plaintiff reported the incident seconds after the Assault

occurred. Mr. Smith and Ms. Rea were shown the Plaintiff bruised, bleeding and swollen hand at

that very moment. The Plaintiff then took the letter he received from Mr. Smith to Ms. Roberts.

Ms. Roberts told Plaintiff, there is absolutely nothing she can do about the incident, because Ms.

Ricasa claimed she did not close the door on Plaintiff, and there was no eye witness who could

corroborate the Plaintiff's claim. Ms. Roberts told the Plaintiff it was his word against Ms.

Ricasa's word. The outcome from that meeting was "Life is not Fair", and sometimes you just

have to take it on the chin or on the hand in this case. To this date, there was no action ever taken

against Ms. Ricasa to the Plaintiffs knowledge, and his request to see something in writing that
Ms. Ricasa was questioned about the incident was never granted.

13.     To further substantiate the Plaintiffs claim of Micro-management and Discrimination,
immediately after the Assault incident, Defendant Supervisor Nancy Rea began taking notes
every time the Plaintiff interacted with Ms. Rea, whether it was work related or personal. As
explained in the original complaint, the Plaintiff filled in for the Co-Occurring Committee
conference for Ms. Sandra Adomako-Bempong, Black Female, who was the coordinator of that
event and Health Planner for the Health Division at COG. The Plaintiff had several discussions
with Ms. Adomako-Bempong, who decided while on maternity leave not to return to COG in
January 2006 as scheduled, and warned the Plaintiff about Ms. Rea's Discriminatory and
Prejudice attitude toward her. The Plaintiff was again asked by Ms. Rea to continue to fill in for
Ms. Adomako-Bempong attending and facilitating the Co-Occurring committee's bi-weekly
meetings, as well as assist with facilitating meetings for her other committees and perform his job
as an Administrative Assistant to the Health section at COG. (Note: This request by Ms. Rea was
before the Assault by Ms. Ricasa). The Plaintiff charges that, roughly three weeks after the
Assault incident and beginning in February 2006, Ms. Rea instructed the Plaintiff to meet with
her every morning and evening to discuss his daily tasks. Ms. Rea took that a step further,
presenting forms for Plaintiff to fill out daily to explain and detail each task he had planned for
that day (Exhibit H). Ms. Rea rated each task by importance using an A, B, C method, and
estimated the time it took each task to complete and then rearranged the order of the tasks as she
thought appropriate. At the end of the day, Ms. Rea rated the Plaintiff on how well he performed
each task. The Plaintiff questioned Ms. Rea about being Micro-Managed, and even brought it to
the attention of her Direct Supervisor Calvin Smith and the COG Human Resources who offered
no explanation. Ms. Rea stated to the Plaintiff that the Micro-Managing was necessary to

8

substantiate the Plaintiffs Performance Appraisal. (Note: No Other COG employee was subject to any such requirement. Ms. Rea methods was not COG policy. The Plaintiff never received a performance appraisal).

14.    Ms. Rea continued the Micro-Management from February 2006 until she requested his termination for no justifiable cause. The Plaintiff contends that subsequent to the Assault he had to endure the embarrassing and wrongful Micro-Management by Ms. Rea towards Plaintiff including her direct insults and racially and discriminatory statement and actions made directly to the Plaintiff. Everyday following the Assault when the Plaintiff reported to Ms. Rea she had the professionally degrading discussions about work to be performed that day with the Plaintiff, door open, for all staff to observe and hear. She would detail every single moment of Mr. Collins workday while taking notes and would systematically tell Mr. Collins not to handle any of the Creative work that was necessary to keep work flowing in the department while she searched for a replacement for Ms. Adomako-Bempong. Mr. Collins contends that before the Assault by Ms. Ricasa the Plaintiff was asked fill in for Ms. Adomako-Bempong but shortly after the Assault was instructed by Ms. Rea not attend any more of the committee's meetings but rather let the new contract employee Ms. Beth Nelson, (White Female) attend the meetings. Ms. Nelson did attend some meetings but consequently asked the Plaintiff to go on her behalf, which he did because she said "She was not contracted for that type work". Following the Assault, Ms. Rea always instructed the Plaintiff to give the Creative work to either the new contract employee with COG, Lauren Udwari (White Female) or the unnamed college intern (White Female), who worked only two days a week, was taking classes, and had another job. (Note: She did not have a designated work schedule). Ms. Rea would systematically tell the Plaintiff to give all the Creative work to the inexperienced white females and direct the Plaintiff to only do the lesser manual type tasks. When questioned, Ms. Rea would say "I don't want you doing that kind of work anymore, only Administrative Assistant work". This allowed for an extremely confusing and negative work

environment, because Ms. Udwari's office was directly across from Ms. Rea's who could overhear the Micro-Managing. When Mr. Collins walked across the hall to tell Ms. Udwari that Ms. Rea wanted her to complete certain tasks, Ms. Udwari would respond, "I don't have time to do that" or "I don't know how to do that, can you just do it". The Plaintiff would then walk across to Ms. Rea's office who could hear Ms. Udwari say no, who in turn would say, "Give it to the unnamed white female" to do. The Plaintiff would respond "She is not here, and I have not heard from her in days, and this project or task has a due date". Ms. Rea would then say to the Plaintiff, "Oh well you just take care of it". Further the Plaintiff had to train the interns on how to perform most of those tasks.

15.     Mr. Collins cooperated with the Micro-Management against his will, and continued to work in this hostile environment with the constant feeling of being in jeopardy of termination and experienced a tremendous amount of emotional distress. There are several other occasions that the Plaintiff will testify to and that witnesses will corroborate that further illustrate Ms. Rea's Stereotypical, Prejudicial and Biased behavior towards Mr. Collins based on his Race (Black) and Sex (Male). Mr. Collins Wrongful Termination is fully documented and supported by the Unemployment Hearing findings. Mr. Collins was Forced to Resign and therefore was eligible for Unemployment Benefits.

16.     As a result of the Defendants Racial, Sexual, Stereotypical, Discriminatory and Retaliatory actions and behavior and Assault **DONE** by Defendant Marie Ricasa, the Plaintiff continues to suffer intense Emotional Distress and has experienced the utter disruption of his life. Mr. Collins a Single father of two young children was "Wrongfully Terminated**".**   This Assault seriously injured and permanently scarred the Plaintiff's right hand which he uses to work as an Administrative Professional, his main source of income and profession, perform contractor work painting, laying carpet and perform moves. The contracting and moving is a second source of income and planned business venture. Plaintiff was unable to perform this type of work from the

10

date of the Assault, to November 2006 and continues to experience pain and numbness in the hand whenever he uses his right hand to perform such work. Plaintiff intends to seek further medical attention for his injury to his hand. This injury also affected Plaintiffs ability to play favorite sports tennis and basketball and enjoy other activities with family and friends. Plaintiff declares his right hand is vital to his livelihood.

17.     Mr. Collins Affirms All **"Causes of Action"** are inclusive with exception to individual acts by defendants and **DONE** by the Defendants' to Plaintiff and occurred during the period August 2005 through June 30th 2006 at COG. Plaintiff continues to suffer from Defendants' actions.

11

## FIRST CAUSE OF ACTION

### ASSAULT

18.     The Plaintiff realleges and incorporates by reference, as though fully set forth herein, and every allegation set forth in (Exhibit A) as inclusive with references in paragraphs 1-17 above.

19.      Defendant Marie Ricasa's committed an intentional act which resulted in injury pain, permanent, scarring and bodily harm to Plaintiffs right hand with a large heavy door on COG premises. Defendants' failed to protect Plaintiff from harmful contact, Assault, by Defendant, Marie Ricasa against the Plaintiff's person, to which Plaintiff did incur bodily harm and incurred medical expenses pain and suffering, and emotional distress. As such, Plaintiff is entitled to recover punitive damages from COG which DOES (Exhibit A) and Amended Complaint to the Plaintiff in an amount according to proof.

## SECOND CAUSE OF ACTION

### SEXUAL HARRASSMENT

20.     The Plaintiff realleges and incorporates by reference, as though fully set forth herein, each and every allegation set forth in the references in the Amended Complaint and (Exhibit A) as inclusive.

17.     Defendants' engaged in blatant and outrageous conduct toward Plaintiff with the intention to Harass Plaintiff based on his SEX with malicious and oppressive intent. Defendants' acted with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress from the Sexual Harassment and with wanton and reckless disregard for the injurious result to Plaintiff. Plaintiff if entitled to general and compensatory damages under TITLE VII of the Civil Rights Act of 1964, (TITLE VII) in an amount according to proof.

12

## SECOND CAUSE OF ACTION

### RACIAL HARRASSMENT

21.     The Plaintiff realleges and incorporates by reference, as though fully set forth herein, each and every allegation set forth in the references in the Amended Complaint and (Exhibit A) as inclusive.

22.     Defendants' engaged in blatant and outrageous conduct toward Plaintiff with the intention to Racially Harass Plaintiff based on his RACE with malicious and oppressive intent. Defendants' acted with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress from the Racial Harassment and with wanton and reckless disregard for the injurious result to Plaintiff.  Plaintiff if entitled to Damages to under TITLE VII of the Civil Rights Act of 1964 (TITLE VII) in an amount according to proof.

## THIRD CAUSE OF ACTION

### RACIAL DISCRIMINATION

23.     The Plaintiff realleges and incorporates by reference, as though fully set forth herein, each and every allegation set forth in the references in the Amended Complaint and (Exhibit A) as inclusive.

Defendants' engaged in blatant and outrageous conduct toward Plaintiff with the intention to Racially Discriminate against Plaintiff based on his Race with malicious and oppressive intent. Defendants' acted with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress from the Racial Discrimination and with wanton and reckless disregard for the injurious result to Plaintiff.  Plaintiff is entitled to general and compensatory damages under TITLE VII of the Civil Rights Act of 1964, (TITLE VII) in an amount according to proof.

## FOURTH CAUSE OF ACTION

### SEXUAL DISCRIMINATION

20.    The Plaintiff realleges and incorporates by reference as, though fully set forth herein, each and every allegation set forth in the references in the Amended Complaint and (Exhibit A) as inclusive.

Defendants' engaged in blatant and outrageous conduct toward Plaintiff with the intention to Sexually Discriminate against Plaintiff based on his Sex with malicious and oppressive intent. Defendants' acted with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress from the Sexual Discrimination and with wanton and reckless disregard for the injurious result to Plaintiff.  Plaintiff if entitled to general and compensatory damages under TITLE VII of the Civil Rights Act of 1964, (TITLE VII) in an amount according to proof.

### FOURTH CAUSE OF ACTION

### WRONGFUL TERMINATION (FORCED TO RESIGN)

21.    The Plaintiff realleges and incorporates by reference as, though fully set forth herein, each and every allegation set forth in the references in the Amended Complaint and (Exhibit A) as inclusive.

Defendants' engaged in blatant and outrageous conduct towards Plaintiff and Wrongfully Terminated Plaintiff as a result of being Micro-Managed for an unsubstantiated reason. Defendant's Nancy Rea and Calvin Smith provided no explanation to terminate the Plaintiff other than, "Nancy wants to fire you", "She doesn't want to work with you anymore".  Plaintiff affirms that his Wrongful Termination and Forced Resignation was based strictly on Plaintiffs Race and Sex.  (Note: Ms. Rea's Sexual and Racial comments directed to the Plaintiff and accounted in both the Amended Complaint and (Exhibit A).  (Exhibit D) is referenced in the Amended Complaint and is evidence of the Forced Resignation (See Exhibit E).

14

Defendants' acted with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress, due to lost wages, extreme embarrassment and many other potential financial losses through lost business opportunities and job contacts, lost health insurance for Plaintiff and Plaintiff's children, cut-off dental insurance. The defendant showed no regard for injurious result to the Plaintiff. Plaintiff is entitled to Damages under TITLE VII of the Civil Rights Act of 1964 (TITLE VII) in an amount according to proof.

## FIFTH CAUSE OF ACTION

### RETALIATION

22.    The Plaintiff realleges and incorporates by reference as, though fully set forth herein, each and every allegation set forth in the references in the Amended Complaint and (Exhibit A) as inclusive.

23.    Defendants' engaged in blatant and outrageous conduct towards Plaintiff by Retaliating against Plaintiff as a result of the Plaintiff reporting the Harassment and Assault incident to COG Director, David Robinson. Evidence will show shortly after the Plaintiff reported the Assault and Harassment to Mr. Robinson, Defendants immediately began to Retaliate against Plaintiff with discriminatory and suggestive questions about the Assault and began to Micro-manage the Plaintiff. Plaintiff affirms that the Retaliation was based strictly on Plaintiffs Race and Sex. Evidence will be produced at trial.

Defendants' acted with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress by Retaliation against the Plaintiff for reporting a criminal act. (Assault and Racial and Sexual Discrimination).   The defendant showed no regard for injurious result to the Plaintiff. Plaintiff if entitled to damages under Whistle Blower statute which is governed by TITLE VII of the Civil Rights Act of 1964, (TITLE VII) in an amount according to proof.

## SIXTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL

## DISTRESS DUE TO STEROTYPING

24.     The Plaintiff realleges and incorporates by reference, as though fully set forth herein,

each and every allegation set forth in the references in the Amended Complaint and (Exhibit A) as

inclusive.

25.     Defendants' engaged in blatant and outrageous conduct toward Plaintiff with the

intention to emotionally distress the Plaintiff based on his SEX and Race with calculated malice.

Defendants' acted with reckless disregard for the probability of causing Plaintiff to suffer severe

emotional distress from being Stereotyped with wanton and reckless disregard for the injurious

result to Plaintiff.  Plaintiff if entitled to Damages under TITLE VII of the Civil Rights Act of

1964, (TITLE VII) in an amount according to proof.

## **PRAYER**

WHEREFORE, the Plaintiff seeks judgment as follows:

a.       For general damages, according to proof;

b.       For medical expenses and related items of expenses, according to proof;

c.       For loss of earnings and other economic or pecuniary damages, according to proof;

d.       For punitive and exemplary damages, according to proof;

e.       For all cost related to suit;

f.       For Prejudgment interest

g.       For such other and further relief as the Court deems just and proper.


Dated August 17, 2007

By: _____
Madison Collins Jr.

CERTIFICATE OF SERVICE
I Madison Collins JR.
WILL MAIL A COPY TO: Laurence P. Postal
                     Seyfarth Shaw LLP
                     815 Connecticut Ave, NW
                     Ste #500
                     Washington DC 20006-4004